IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No. 7:25-cv-00583-FL

| | |
|---|---|
| Alisa Carr and Avery Marshall,<br><br>*Plaintiffs*,<br><br>v.<br><br>Detective Sergeant J. Dylan Thomas in his individual and official capacities, Captain Nazareth Hankins in his individual and official capacities, John Does in their individual and official capacities, Lee County, Lee County Sheriff Brian Estes in his official capacity, Pender County, and Pender County Sheriff Alan Cutler in his official capacity,<br><br>*Defendants*. | **LEE COUNTY DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THEIR RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE** |

NOW COME defendants Detective Sergeant J. Dylan Thomas, Lee County, and Lee County Sheriff Brian Estes (collectively referred to as "Lee County Defendants"), by and through counsel, and pursuant to Local Rule 7.1(g), hereby submit this reply brief in support of their motion to dismiss and motion to strike.

## STATEMENT OF THE CASE

Pender County Defendants filed their motion to dismiss on April 21, 2025, (D.E. 23) and Lee County Defendants filed their own on May 27, 2025. (D.E. 27.) On July 8, 2025, Plaintiffs responded in opposition to the motions to dismiss, improperly splitting their argument in response to Lee County Defendants' motion to dismiss between their two briefs.[1] (D.E. 41, 42.) In doing so, Plaintiffs circumvent Local Rule 7.2(f), which requires that a memorandum in opposition be

---

[1] Plaintiffs have effectively manufactured a response brief that comprises approximately 54 pages.

limited to 30 pages. Lee County Defendants now respond to the arguments raised by Plaintiffs in support of their motion to dismiss and motion to strike.[2]

## ARGUMENT

**I.** **Plaintiffs have failed to plausibly allege a Takings Claim under the United States or North Carolina Constitutions.**

Plaintiffs continue to attempt to transform their claim involving incidental property damage resulting from the lawful execution of a search warrant into takings claims under both the Fifth Amendment and the North Carolina Constitution. In support of their position, Plaintiffs provide a total of **zero** cases in which this Court, any North Carolina court, or any court in the Fourth Circuit, has ever found such incidental damage to amount to a taking under the Fifth or Fourteenth Amendments. Despite the lack of any history or precedent to establish such a claim, Plaintiffs contend that the Court should apply a broad interpretation of the Fifth Amendment, an interpretation which has been previously rejected by this Court. *See Cybernet, LLC v. David*, No. 7:16-CV-16-RJ, 2018 WL 5779511, at *16 (E.D.N.C. Nov. 2, 2018), *aff'd*, 954 F.3d 162 (4th Cir. 2020) (granting summary judgment for plaintiffs' taking claim because "the alleged damage was caused as a result of the exercise of police power rather than eminent domain power"). Plaintiffs ask this Court to make new law that would transform a litany of typical law enforcement activities into compensable takings. Plaintiffs' interpretation of the Fifth Amendment of the United States Constitution and the North Carolina Constitution's "Law of the Land Clause" are at odds with all historical precedent, and thus, Plaintiffs fail to state a claim upon which relief may be granted.

---

[2] Lee County Defendants have complied with Local Rule 7.2(f) and are unable to address all of Plaintiffs' arguments, raised in their two response briefs, due to space constraints. Lee County Defendants reassert all arguments made in their original memorandum.

### A. Under Plaintiffs' new proposed application of the Fifth Amendment, all search warrants would become a compensable taking.

Plaintiffs claim that a plaintiff "pleads a prima facie case of a physical taking without just compensation by alleging four elements: the government (1) caused the property damage (2) intentionally or foreseeably (3) for public use (4) without paying just compensation." (D.E. 41, p. 14.) However, according to the allegations made in the Complaint, damage is not even a necessary element. Instead, they contend that law enforcement simply "occupying" a residence, pursuant to a search warrant, for a brief period of time, can also form the basis of a taking claim. (D.E. 1 ¶¶ 369, 370, 419, 421, 423.) Plaintiffs allege that when deputies executed the search warrant, "Carr suffered an 'actual occupation' of her property, which was a 'substantial interference with elemental rights growing out of the ownership of the property.' Once that interference occurred, just compensation was required." (D.E. 41, p. 24) (citations omitted). According to Plaintiffs, when law enforcement enters a residence pursuant to a search warrant, a compensable taking has occurred and "the Fifth Amendment required just compensation, full stop." (D.E. 1 ¶ 423.) This position is insupportable as a matter of precedent and common sense.

An element-by-element analysis further highlights this point[3]:

The first element requires that the taking resulted from a government action. *See Armstrong v. United States*, 364 U.S. 40, 48-49 (1960). Under Plaintiffs' proposed new application of the Fifth Amendment, this element would always apply, not only to the execution of search warrants

---

[3] Plaintiffs assert that these four elements are necessary to plead a prima facie case of a physical taking without just compensation. However, the undersigned can locate no cases that support such a claim. *See Knick v. Twp. Of Scott*, 588 U.S. 180, 209 (2019) (Kagan, J., dissenting) (listing the "two necessary elements" of a taking claim: "First, the government must take the property. Second, it must deny the property owner just compensation."). Plaintiffs' purported "elements" are an amalgamation of rules from various cases. For the purpose of providing a commonsense application highlighting the fallacy of Plaintiffs' proposed scheme, Lee County Defendants will utilize their suggested "elements" without prejudice to later disputing their applicability.

and arrest warrants, but to every other action on the part of a law enforcement officer (who by definition is a government official). Thus, under the scheme Plaintiffs propose, element one will always be met.

The second element requires that the invasion is intended or is the foreseeable result of the governmental action. *See Yawn v. Dorchester County*, 1 F.4th 191 (2021). Of course, all search warrants require that property be "occupied" for a period of time. The relevant search warrant, issued by a Superior Court judge, stated, "You are **commanded** to search the premises, vehicle, person and other place or item described in the application for the property and person in question. If the property and / or person are found, make the seizure and keep the property subject to Court Order and process the person according to law. You are **directed** to execute this SEARCH WARRANT within forty-eight (48) hours from the time indicated on this Warrant and make due return to the clerk of the Issuing Court." (D.E. 28-1, p. 1) (emphasis added). According to the plain and unambiguous meaning of this warrant, like all other search warrants, deputies were commanded and directed by a Superior Court judge to make entry onto Plaintiffs' land and occupy it for a period of time to search "for the property and person in question." The purported "invasion" is the very purpose of the warrant. Thus, under Plaintiffs' scheme, the execution of a search warrant will always meet the second element.

Further, to the extent the purported government "invasion" is damage to property, tactical methods of entry, such as breaking a door or using distraction devices like flash bangs, are commonplace when executing a search warrant when, such as in this case, the occupant fails to open the door for law enforcement. (D.E. 1 ¶¶ 226-232.) "[T]he Restatement, history, and precedent demonstrate that the privilege to enter includes a privilege to use force to enter." *Slaybaugh v. Rutherford Cnty., Tennessee*, 114 F.4th 593, 602 (6th Cir. 2024), *cert. denied*, 145

S. Ct. 1959 (2025). Plaintiffs do not allege that this warrant-authorized search was conducted in an unreasonable manner or that the alleged property damage was unnecessary or unreasonable – nor could they. (D.E. 1.) According to Plaintiffs' allegations, deputies caused the following incidental damage to the residence during the execution of the warrant: "Shattered front storm door, dented front metal door, damaged front door frame, cracked walls, burned couch, burned and ripped rug, a hole in an interior bedroom door, a broken chair, a broken crawl-space door, and ripped and displaced insulation." (D.E. 1 ¶ 375.) This alleged incidental damage is an expected result when deputies have to breach a door, utilize flash bang devices, and search a residence.

It is an obvious reality that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). These methods are often necessary for officer safety and to prevent the destruction of evidence. According to Plaintiffs, such tactics, required by a property owner's own refusal to allow officers to enter, amounts to a taking because "the officers' breaking into Carr's home and their use of other destructive tactics to extract a wanted person were intentional." (D.E. 41, p. 16.) Thus, under the scheme Plaintiffs propose, if a property owner refuses to open their door pursuant to a search or arrest warrant, necessitating the use of tactical entry, the second element will be met and "the government" will have to compensate for the damage caused by the property owner's own refusal to comply with lawful commands.

The third element requires that the occupation or damage was taken "for public use." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). Plaintiffs contend that this element applies because the deputies were acting within the general scope of their duties and the "raid's purpose was to apprehend a wanted suspect for the public's benefit." (D.E. 41, p. 10-11.) Once again, all search warrants are, by their very nature, executed within the scope of a law enforcement officer's

5

Case 7:25-cv-00583-FL    Document 44    Filed 07/21/25    Page 5 of 14

duties and are done with a law enforcement purpose "for the public's benefit." Thus, under the scheme Plaintiffs propose, element three will always be met.

Lastly, Plaintiffs contend that since all three preceding elements will be met during all search and arrest warrants, the temporary seizure of property and any incidental property damage requires "the government" to pay just compensation. If the government fails to do so, Plaintiffs assert that there has been a taking without just compensation.

Plaintiffs' proposed scheme is an untenable slippery slope, which would dramatically impede law enforcement's ability to conduct investigations and effectuate arrests. It would require compensation to be paid each and every time law enforcement officers effectuate a search warrant, seize property, impound vehicles, or engage in various other law enforcement activities. Plaintiffs dispute this point, instead contending that "often, the execution of a warrant will not result in a compensable taking – because all the elements for a taking must be met[.]" (D.E. 41, p. 14.) However, as demonstrated above, a commonsense application of Plaintiffs' proposed scheme shows that in every instance the execution of a search warrant would result in a compensable taking since a search warrant requires law enforcement to occupy a premises/property for a period of time while effectuating the warrant for a public purpose.

Perhaps in recognition of the momentous consequences of their proposed scheme, Plaintiffs provide what is intended to be a reassuring footnote claiming that under their new application of the Fifth Amendment there may be an exception for property owners who are "not innocent" due to "a historically-grounded exception to the compensation requirement." (D.E. 149, p. 14.) However, in support of this purported "historically-grounded exception," Plaintiffs cite to cases involving liens on uncompleted boat hulls and building materials, the widening of a public roadway to decrease traffic congestion, and the taking of land resulting from the Mississippi Flood

Control Act of 1928. (D.E. 41, fn. 3.) None of these cases involve law enforcement action or property owners who were "not innocent." Should the Court choose to dramatically expand Fifth Amendment jurisprudence in the way Plaintiffs propose, it is unlikely that anyone else will interpret these cases as providing the purported exception that Plaintiffs contend.

Even assuming *arguendo* that these cases included the hidden meaning that Plaintiffs espouse, Plaintiffs' exception for property owners who are "not innocent" remains unworkable in practice. At what point would an individual subjected to a search or arrest warrant be determined to be innocent or not? In a justice system in which all citizens are presumed innocent until proven guilty, it can be assumed that such a determination would require the final adjudication of any accompanying criminal proceedings before it can be determined whether "just compensation" is required. As this Court is well aware, criminal investigations may take years before criminal charges are brought, such charges can take many more years before a verdict is returned, and the appeal process may last even longer. Throughout that entire time, an individual could continue to assert their innocence. Under Plaintiffs' purported enlargement of the Fifth Amendment, it is unclear when, if ever, "the government" would know whether a property owner is innocent or not for the application of a compensation requirement. All the while, interest would be accruing. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984).

Plaintiffs' proposed enlargement of the Fifth Amendment simply cannot work in practice. It is for that reason that there is no precedent to support such an interpretation. Thus, Plaintiffs fail to state a claim upon which relief may be granted, and their takings claims should be dismissed.

**B. There is no historical precedent to support Plaintiffs' interpretation of the Fifth Amendment.**

"In both England and America, the proper recourse for parties who suffered property damage from police conduct was to challenge the legality of that conduct, not allege a taking even

7
Case 7:25-cv-00583-FL    Document 44    Filed 07/21/25    Page 7 of 14

if the action was otherwise lawful. . . . Courts applying the privilege more recently have reached the same conclusions." *Slaybaugh*, 114 F.4th at 600–01. A property owner's right to exclude visitors from their home is not absolute but is instead limited by longstanding background principles such as common law tort privileges. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160–61 (2021). There is a well-founded historical exception for law enforcement's search-and-arrest privilege, and the Supreme Court has made clear that "isolated physical invasions," such as Plaintiffs allege in the instant case, should not be assessed as appropriations of a property right. *Id*. at 159-60; *Slaybaugh*, 114 F.4th at 598-604.

Lee County Defendants have provided the Court with a list of cases across the country declining to evaluate claims of property damage under the Fifth Amendment when the damage is alleged to have occurred pursuant to the execution of a search warrant. (D.E. 28, pp. 18-19.) Most notably, this Court, in *Cybernet, LLC v. David*, specifically addressed the issue and granted summary judgment for a taking claim because no property was taken within the meaning of the Fifth Amendment. *Cybernet, LLC,* 2018 WL 5779511, at *16. In response, Plaintiffs contend that this Court should ignore its prior holding because it was never appealed and its holding was overruled by *Yawn v. Dorchester County*, 1 F.4th 191 (4th Cir. 2021). They further contend that there is a "circuit split on this issue."[4] (D.E. 41, p. 21.) However, a review of the case law shows that there may be a circuit split regarding whether there is a *per se* categorical exception from

---

[4] In support of this claim, Plaintiffs refer at length to a statement from two Supreme Court justices after the Supreme Court denied certiorari for a case where the Fifth Circuit ruled there was no taking claim for $50,000 of damage caused by law enforcement. The Supreme Court has repeatedly clarified that such statements have no precedential value. *Singleton v. Comm'r*, 439 U.S. 940, 944–45 (1978) ("One characteristic of all opinions dissenting from the denial of certiorari is manifest. They are totally unnecessary. They are examples of the purest form of dicta, since they have even less legal significance than the orders of the entire Court which . . . have no precedential significance at all.").

takings claims for all **plenary police powers**, but there is no split opinion in the specific context of property damage resulting from **law enforcement action**. *See Baker v. City of McKinney, Texas*, 145 S. Ct. 11, 13 (2024).

It is important to note that the facts of *Yawn* could not be any more distinct from those at bar. Here, deputies are alleged to have damaged or destroyed property during the execution of a search warrant issued by a competent judicial official – incidental property damage that is commonplace when a property owner refuses to open their door. In *Yawn*, the county's use of aerial pesticide spray to kill mosquitoes with the Zika virus accidentally killed innocent bees. *Yawn,* 1 F.4th at 192-194. Although the Fourth Circuit declined to extend a *per se* exemption for all government actions taken pursuant to plenary police powers, the court in *Yawn* never addressed the application of a taking claim in a law enforcement context. Thus, it cannot be fairly said that the Fourth Circuit overruled this Court's holding in *Cybernet* or that it addressed the issue presently before the Court at all. The Fourth Circuit simply declined to provide a broad categorical exception for property damage caused by a government's use of its wide range of plenary police powers.

Plaintiffs provide no historical or contemporary authority where a property owner succeeded under the Takings Clause involving facts resembling those alleged in this case. Significantly, they provide no cases that would establish that their "property" was ever "taken." Instead, they rely on a case involving bee hives accidentally killed by the county's use of pesticides. These cases could not be more inapposite. For that reason, Plaintiffs fail to state a claim upon which relief may be granted under the Fifth Amendment. *See Slaybaugh*, 114 F.4th at 603 (rejecting takings claim because plaintiffs "failed to identify any history or precedent establishing that the police have 'taken' their 'property' within the meaning of the Fifth Amendment[.]"); *See also Baker v. City of McKinney, Texas*, 84 F.4th 378, 385 (5th Cir. 2023), *cert. denied*, 145 S. Ct.

11, 220 L. Ed. 2d 240 (2024) (rejecting takings claim where the plaintiffs did not provide "historical or contemporary authority that involves facts closer to those at bar and where the petitioner succeeded under the Takings Clause.").

**C. Plaintiffs' takings claim under the North Carolina Constitution similarly fails.**

There is a similar absence of North Carolina case law to support Plaintiffs' contention that the just-compensation requirement is applicable to incidental damage resulting from the execution of a search warrant. Plaintiffs contend that "[t]he elements of a North Carolina takings violation are like those of a Fifth Amendment takings violation." (D.E. 41, p. 18.) However, similar to their Fifth Amendment claim, Plaintiffs utterly fail to identify a single case, historical or contemporary, establishing precedent that their allegations amount to a taking within the meaning of the North Carolina Constitution. Thus, Plaintiff's takings claims fail under the North Carolina Constitution.

## II. <u>Lee County Is an Improper Party.</u>

Plaintiffs state, "No matter who owes compensation (the county, the sheriff's office, or both), 'the government' is clearly the actor that damaged the property for takings purposes." (D.E. 41, p. 15.) Throughout their briefs, Plaintiffs label four separate and distinct entities, two Sheriff's Offices and two Counties, as "the government." Despite Plaintiffs' attempt to conflate four separate entities into one "government," case law provided in Lee County Defendants' original memorandum makes clear that the County cannot be liable for the alleged wrongful acts of the Sheriff's Office since it is not a program or department of Lee County. (D.E. 28, pp. 22-23.)

Plaintiffs assert that their claims against Lee County should proceed because "the damage to Carr's property was not a takings violation; the failure to pay for it is." (D.E. 41, p. 25.) However, they do not allege that the County took any property for a public use; they allege that deputies from the Sheriff's Office did. Thus, even under their broad interpretation of the Fifth

Amendment, the County cannot be held liable for the alleged "taking" conducted by another. The County is an improper party.

## CONCLUSION

For the reasons and authorities cited herein, Lee County Defendants respectfully request that their motion to dismiss and motion to strike be granted.

Respectfully submitted this 21st day of July, 2025.

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. State Bar No. 59228
Bradley O. Wood
N.C. State Bar No. 22392
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
E-mail: Nick.Acevedo@wbd-us.com
        Brad.Wood@wbd-us.com

*Counsel for Defendants Detective Sergeant J. Dylan Thomas, Lee County, and Lee County Sheriff Brian Estes*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

Pursuant to the Rule 7.2(f) of the Local Rules for the Eastern District, I hereby certify that the foregoing memorandum complies with the Court's page limit requirements and that it does not exceed 10 pages in total, excluding the case caption, signatures, and certificates.

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. State Bar No. 59228
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Telephone: (336) 721-3600
E-mail: Nick.Acevedo@wbd-us.com

*Counsel for Defendants Detective Sergeant J. Dylan Thomas, Lee County, and Lee County Sheriff Brian Estes*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for defendants *Detective Sergeant J. Dylan Thomas, Lee County, and Lee County Sheriff Brian Estes* in this matter, and is a person of such age and discretion as to be competent to serve process.

I hereby certify that on July 21, 2025, I electronically filed the foregoing **LEE COUNTY DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THEIR RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE** with the Clerk of Court using the CM/ECF system which will also send an email notification to the following:

ADDRESS:

Marie Miller
IN Attorney No. 34591-53
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Suite 2160
Phoenix, AZ 85012
480-557-8300 (phone)
480-557-8305 (fax)
E-mail: mmiller@ij.org

Jared McClain
DC Attorney No. 1720062
INSTITUTE FOR JUSTICE
901 N. Glebe Rd. Suite 900
Arlington, VA 22203
703-682-9320 (phone)
703-682-9321 (fax)
E-mail: jmcclain@ij.org

Dan Gibson
NC Bar No. 49222
DAVIS HARTMAN WRIGHT
209 Pollock Street New Bern, NC 28560
984-345-3078 (phone)
984-345-3078 (fax)
E-mail: rdg@dhwlegal.com

*Attorneys for Plaintiffs*

Scott D. MacLatchie
N.C. Bar No. 22824
Hall Booth Smith, P.C.
11215 North Community House Road, Suite 750
Charlotte, North Carolina 28277
Telephone: (980) 949-7820
E-mail: smaclatchie@hallboothsmith.com

*Attorney for Defendants Pender County, Nazareth Hankins, and Alan Cutler*

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. State Bar No. 59228
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
E-mail: Nick.Acevedo@wbd-us.com

*Counsel for Defendants Detective Sergeant J. Dylan Thomas, Lee County, and Lee County Sheriff Brian Estes*