IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:25-CV-583-FL

ALISA CARR and AVERY MARSHALL,  )
                                             )
           Plaintiffs,  )
                                             )
      v.  )
                                           )
DETECTIVE SERGEANT J. DYLAN  )
THOMAS, DETECTIVE SERGEANT  )
WILLIAM MURPHY, CAPTAIN  )
NAZARETH HANKINS, CAPTAIN  )
JAMES ROWELL, LIEUTENANT  )
THERON SHEPARD, LIEUTENANT  )
DANIEL WELLS, LIEUTENANT  )
NICHOLAS KEHAGIAS, SERGEANT  )
JOSIAH DORTON, SERGEANT  )
JONATHON WHITNEY, SERGEANT  )
STEPHEN ENGLISH, SERGEANT  )          ORDER
BENJAMIN LANE, DETECTIVE  )
CHRISTIAN NOWACHEK, DEPUTY  )
NATHAN FRANKLIN, DEPUTY  )
JONATHON BENJAMIN, DEPUTY  )
TANNER SMITH, DEPUTY JOSEPH  )
FREEMAN, AND DEPUTY DAVID  )
BRADSHAW, in their individual  )
and official capacities, LEE COUNTY,  )
LEE COUNTY SHERIFF BRIAN ESTES  )
in his official capacity, PENDER  )
COUNTY, AND PENDER COUNTY  )
SHERIFF ALAN CUTLER in his official  )
capacity,  )
                                           )
          Defendants.  )

    This civil rights action is before the court upon motions to dismiss by defendants Nazareth

Hankins ("Hankins"), Jonathon Benjamin ("Benjamin"), David Bradshaw ("Bradshaw"), Josiah

Dorton ("Dorton"), Stephen English ("English"), Joseph Freeman ("Freeman"), Nicholas

Kehagias ("Kehagias"), Benjamin Lane ("Lane"), Christian Nowachek ("Nowachek"), James Rowell ("Rowell"), Theron Shepard ("Shepard"), Tanner Smith ("Smith"), Daniel Wells ("Wells"), Jonathon Whitney ("Whitney"), Pender County, and Pender County Sheriff Alan Cutler ("Cutler") (collectively, the "Pender County defendants") (DE 89), and by J. Dylan Thomas ("Thomas"), William Murphy ("Murphy"), Lee County, and Lee County Sheriff Brian Estes ("Estes") (collectively, the "Lee County defendants") (DE 55). The Pender County defendants seek dismissal of all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). The Lee County defendants seek dismissal of all claims against them pursuant to Rule 12(b)(6), and they move to strike certain allegations pursuant to Rule 12(f). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motions are granted in part and denied in part as set forth herein.

## STATEMENT OF THE CASE

Plaintiffs Alisa Carr ("Carr") and Avery Marshall ("Marshall") commenced this civil rights suit April 1, 2025, and filed amended complaint January 5, 2026, asserting the following three claims arising out of an allegedly improper law enforcement search of plaintiffs' home:

1) Unreasonable search and seizure of persons and property under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 ("§ 1983"), against defendants Thomas, Murphy, Hankins, Rowell, Shepard, Wells, Kehagias, Dorton, Whitney, English, Lane, Nowachek, Franklin, Benjamin, Smith, Freeman, and Bradshaw in their individual capacities.

2) Taking without just compensation pursuant to the Fifth Amendment to the United States Constitution and § 1983 asserted by plaintiff Carr against defendants Hankins, Rowell, Shepard, Wells, Kehagias, Dorton, Whitney, English, Lane,

2

Nowachek, Franklin, Benjamin, Smith, Freeman, and Bradshaw in their official capacities, Lee County, Estes in his official capacity, Pender County, and Cutler in his official capacity.

3) Taking without justification under the North Carolina Constitution asserted by plaintiff Carr against the same group of defendants.

Plaintiffs seek nominal and compensatory damages, declaratory relief, and just compensation for the alleged takings, as well as attorneys' fees under 42 U.S.C. § 1988.

The Pender County defendants first filed motion to dismiss April 21, 2025. The Lee County defendants then also filed motion to dismiss May 27, 2025. While these motions were pending, the court granted plaintiffs' motion to compel limited discovery, which motion sought leave to propound an interrogatory asking Pender County to identify all personal involved in the search of plaintiffs' home. The court allowed the plaintiffs 60 days to serve John Doe defendants after receiving the response to this interrogatory.

After engaging in limited discovery, plaintiffs filed amended complaint with the consent of defendants. The amended complaint asserted the same claims and added defendants Benjamin, Bradshaw, Dorton, English, Freeman, Kehagias, Lane, Murphy, Nowachek, Rowell, Shepard, Smith, Wells, Whitney (collectively with defendants Hankins and Thomas "the individual defendants"). Due to the filing of the amended complaint, the court terminated defendants' first motions to dismiss as moot.

The Lee County defendants filed the instant motion to dismiss the amended complaint and strike certain allegations January 20, 2026, relying on the underlying search warrant pursuant to which the search was conducted. The Pender County defendants filed the instant motion to dismiss the amended complaint February 6, 2026, also relying on the search warrant in addition to

3

correspondence between plaintiffs' counsel and defendants' insurer regarding damage to plaintiffs' home. Plaintiffs' filed a consolidated response to both motions February 27, 2026, relying on the Pender County defendants' response to plaintiffs' interrogatory.

### STATEMENT OF FACTS

The facts alleged in plaintiffs' amended complaint are as follows.

Plaintiffs reside together at a house in Willard, North Carolina (the "house"). (Am. Compl. (DE 52) ¶¶ 23, 31–35). Defendants Thomas and Murphy are law enforcement officers employed by the Lee County Sheriff's Office. (Id. ¶ 24). Defendants Hankins, Rowell, Shepard, Wells, Kehagias, Dorton, Whitney, English, Lane, Nowachek, Franklin, Benjamin, Smith, Freeman, and Bradshaw are law enforcement officers employed by the Pender County Sheriff's Office. (Id. ¶ 25). Defendant Estes is the Sheriff of defendant Lee County, and defendant Cutler is the Sheriff of defendant Pender County. (Id. ¶¶ 27, 29).

Plaintiff Carr owns the house, which is located at 680 Messick Road. (Id. ¶ 30). Plaintiff Marshall is Carr's fiancé, and lives at the house with Carr and their two children, K.G. and J.C., who were nine and 16 years old at the time of the underlying events, respectively. (Id. ¶¶ 32, 34).

In April 2024, defendant Lee County began investigating a series of vehicle burglaries and obtained security camera footage of one such burglary which occurred on April 8, 2024. (Id. ¶¶ 40–41). The footage showed the suspect driving a dark sport utility vehicle. (Id. ¶ 42). Through various investigative techniques, law enforcement identified the burglar as Joseph Clark, Jr. ("Clark"). (Id. ¶¶ 44–52). As the investigation progressed, officers interviewed Clark's father, who told them that Clark was then with Clark's sister, who drove a gray Nissan, and he provided a license plate number for that vehicle. (Id. ¶¶ 53–54). Defendant Thomas erroneously recorded the license plate number as VA5234, instead of the correct number VAJ2394. (Id. ¶¶ 55–56).

4

Therefore, either Clark's father incorrectly described the number, or defendant Thomas inaccurately recorded it. (Id. ¶ 57).

According to defendant Thomas, location data on Clark's phone indicated he was within 52 meters of the house on April 9, 2024, even though that address is about 30 miles away from Clark's residence according to his publicly available address information. (Id. ¶¶ 62–64). Clark was in fact located at the property across the street from the house. (Id. ¶ 65).

Defendants knew that the location data indicated only Clark's approximate location, did not show whether Clark actually possessed the phone at the time, and might be inaccurate. (Id. ¶¶ 67–68). Defendant further were aware that at least five other properties, and a public road, lie within 52 meters of the house. (Id. ¶¶ 70-74). The location data therefore did not inform defendants whether Clark's phone had ever been at the house, and defendants did not investigate whether Clark or his phone might have been on any of the other properties within 52 meters of the house (Id. ¶ 80).

Officers from the Lee and Pender County Sheriffs' Offices began surveilling the house after an officer drove by and observed plaintiff Carr's vehicle parked there. (Id. ¶ 88). Plaintiff Carr's vehicle was neither the dark sport utility vehicle observed on security footage, nor the vehicle described by Clark's father, it bore the license plate number FKE8649, and was a different color than either vehicle. (Id. ¶¶ 89–90, 104-105). No officer observed Clark, any sign of his presence, or any vehicle associated with him at the house on April 9, 2024. (Id. ¶¶ 110–117).

Defendant Hankins told defendant Thomas, or another law enforcement officer that later informed defendant Thomas, that defendant Hankins saw "a Nissan" parked in front of the house. (Id. ¶¶ 121-124). Defendant Hankins did not provide anymore details about the car other than that "it was a Nissan." (Id. ¶ 125).

5

Sometime after 8:00 PM on April 9, 2024, defendant Thomas applied for a warrant to search the house and other structures and vehicles on the property. (Id. ¶ 128). The sole basis on which defendants could have connected Clark to the house was Clark's phone's location data, but in the probable cause affidavit, defendant Thomas falsely swore that Pender County personnel observed the vehicle Clark's father had described parked at the house. (Id. ¶¶ 129-135). Yet defendants knew or had access to information demonstrating that plaintiff Carr's vehicle was not the vehicle Clark's father had described, and that nobody who resided at the house was Clark's sister. (Id. ¶ 149). Thus, plaintiffs allege defendant Thomas's statement in the probable cause affidavit that officers observed Clark's vehicle at the house was knowingly false, or Thomas made the statement entirely in reliance on defendant Hankins's statement there was "a Nissan" in front of the house. (Id. ¶ 168). The affidavit omitted any statement that Clark's vehicle and plaintiff Carr's vehicle did not match in color, license plate number, manufacture year, model, or vehicle identification number, or that a public road and several other properties lie within the area indicated by Clark's cell phone location data. (Id. ¶¶ 173-179, 191-194).

Shortly after midnight on April 10, 2024, a judge issued a warrant to search the house. (Id. ¶ 202). At 1:00 a.m. the same date, defendants Thomas and Hankins, along with defendants Murphy, Rowell, Shepard, Wells, Kehagias, Dorton, Whitney, English, Lane, Nowachek, Franklin, Benjamin, Smith, Freeman, and Bradshaw, executed the warrant. (Id. ¶ 223). These defendants walked past and saw plaintiff Carr's vehicle on their way to the door. (Id. ¶ 252). These defendants did not clearly announce themselves as law enforcement, and plaintiff Carr awoke, thinking the home was "under attack by thieves," peered through the blinds. (Id. ¶¶ 264-265). After seeing plaintiff Carr peer through the blinds, officers broke the front door. (Id. ¶ 268).

6

"Officers broke into the house less than one minute after they first announced their presence." (Id. ¶ 269).

The individual defendants shattered the outer glass storm door and broke the inner metal door free of its frame. (Id. ¶ 285). The individual defendants threw at least two flashbang grenades into the house, one of which struck plaintiff Marshall and set a couch and a rug on fire after detonating. (Id. ¶¶ 288–289). Noxious fumes from the grenades filled the home, and officers ordered plaintiff Marshall to crawl towards them over shattered glass. (Id. ¶¶ 291, 293–296). Defendant Nowachek shouted at plaintiffs' children, and aimed firearms and flashlights at them. (Id. ¶¶ 303–312). The individual defendants seized plaintiff Marshall, aggravating an existing back injury and pointed their firearms at plaintiff Carr and ignored her pleas that she could not breathe because of the grenade fumes. (Id. ¶¶ 322, 326–334). Plaintiff Carr had to be hospitalized. (Id. ¶ 342).

Approximately six minutes into the search, the individual defendants realized the car out front was not the car described in the warrant and stated "that ain't the car." (Id. ¶ 257). After realizing this, the individual defendants continued to search the house, flipping furniture, and damaging doors, the crawlspace, mattresses, closets, and the residents' dressers. (Id. ¶¶ 345-354). The individual defendants found no evidence that Clark had ever been present. (Id. ¶¶ 356–366). Clark was apprehended in another county on April 10 or 11, 2024. (Id. ¶ 366). The individual defendants told plaintiffs that they would have to pay for the damages, and that plaintiffs should be grateful defendants did not damage any other property. (Id. ¶¶ 369–370).

After the search, plaintiffs sought compensation from defendants Lee and Pender Counties in the amount of $10,897.99. (Id. ¶¶ 387–391). These defendants offered to settle the matter, conditioned on plaintiffs giving up all claims against the counties and their personnel based on the

search.  (Id. ¶ 404-405).  Plaintiffs declined that offer, and to date, no defendant has paid any compensation for the search.  (Id. ¶¶ 407, 411).

**COURT'S DISCUSSION**

A.      Motions to Dismiss

1.      Standard of Review

Where a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, plaintiff bears the burden of showing that federal jurisdiction is appropriate when, as here, challenged by a defendant.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[1]  Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint.  Bain, 697 F.2d at 1219.  Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint,"  the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge."  Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

---

[1]      Internal citations and quotation marks are omitted from all citations unless otherwise specified.

8

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[2]

    2.    Analysis

In the instant motions, defendants argue that plaintiffs' Fourth Amendment claim is barred by qualified immunity or otherwise fails to state a claim, that plaintiff Carr's takings claims under the federal and state constitutions fail as a matter of law or are moot due to an alleged settlement agreement, and that Lee and Pender Counties are improper defendants. The court addresses these issues in turn below.

    a.    Fourth Amendment

Plaintiffs' Fourth Amendment claim rests upon four theories: 1) violation of the Warrants Clause; 2) lack of probable cause; 3) violation of the knock-and-announce rule; and 4) continuation of the search after officers knew they had raided the wrong house. (See Pls' Br. Opp'n Lee (DE 92) 23). With respect to this claim, the individual defendants' principal arguments are that they are entitled to qualified immunity where defendant Thomas did not violate the Warrants Clause in his application for the search warrant and that plaintiffs only sufficiently allege that the individual defendants acted pursuant to a facially valid warrant.

The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants

---

[2]     The Pender County defendants also reference Federal Rule of Civil Procedure 12(b)(2) in their motion to dismiss. (DE 89). However, their brief does not assert any grounds for dismissal for lack of personal jurisdiction. (See DE 90). Accordingly, the court does not address personal jurisdiction.

bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233.

"A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . when asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful . . . [because] [t]he plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 396 (4th Cir. 2014); see also Nichols v. Bumgarner, 173 F.4th 511, 523–24 (4th Cir. 2026) ("It is not impossible for defendants to succeed [on a qualified immunity defense] at such an early stage . . . [b]ut such cases are rare.").

Turning to the rights at issue, the Fourth Amendment commands that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. Plaintiffs' first theory under the Fourth Amendment is that defendant Thomas submitted an affidavit that was materially false and omitted material information negating probable cause. Though usually applied in the criminal context, see generally Franks v. Delaware, 438 U.S. 154 (1978), this is a cognizable Fourth Amendment theory in civil § 1983 litigation. See Miller v. Prince George's County, Md., 475 F.3d 621, 627–28 (4th Cir. 2007).

Under plaintiffs' Warrant Clause theory, a defendant can be liable only if he deliberately or with reckless disregard for the truth made material, false statements in an affidavit, or omitted material facts with the intent to make, or with reckless disregard that they would make, the affidavit misleading. Miller, 475 F.3d at 627. An officer acts with reckless disregard if he had a "high degree of awareness" of a statement's probable falsity. Id. With respect to omissions, reckless

disregard can be established by evidence that an officer failed to inform the judicial officer of facts he knew would negate probable cause. Id.

"Moreover, in order to violate the Constitution, the false statements or omissions must be 'material,' that is, necessary to the [] finding of probable cause." Id. at 628. "To determine materiality, a court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id.

Regarding defendant Thomas's statements in the affidavit, plaintiffs plead two factual scenarios in the alternative. Plaintiffs plead that defendant Hankins told defendant Thomas personally, "a Nissan" was at the house, or, in the alternative, defendant Hankins told other officers "a Nissan" was at the house, who then relayed that statement to defendant Thomas. (Am. Compl. (DE 52) ¶¶ 123-124).

Defendant Hankins only stated "a Nissan" was at the house and did not positively identify the car as Clark's. (Am. Compl. (DE 52) ¶¶ 121-124). The search warrant, however, provides that officers "observed the vehicle the suspect's father stated he was riding in[,]" and that officers "confirmed the suspect vehicle has not left [the house]." (DE 56-1 at 8). Based on the well-pled facts of the amended complaint, this statement was not true, and defendant Thomas did not have a basis to believe it to be true.

Moreover, plaintiffs adequately plead that this statement was material to the finding of probable cause. Without the statement that Clark's car was in front of the home, the only connection remaining between the house and the burglaries is the cellphone data putting Clark's phone within 52 meters of the house, which includes "at least five other properties and a public road." (Am. Compl. (DE 52) ¶¶ 13, 129). Accordingly, plaintiffs have sufficiently alleged

defendant Thomas violated the Warrants Clause, thereby satisfying the first prong on the qualified immunity analysis.  See Miller, 475 F.3d at 627–28.

Next, "the law was unquestionably clearly established at the time of the events at issue here."  Id. at 632.  "[T]he Constitution [does] not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause."  Id..

The Lee County defendants argue that plaintiffs' version of events is implausible and devoid of factual support to show a misrepresentation.  However, plaintiffs plead defendant Thomas knew only "a Nissan" was at the house, but then Thomas affirmatively swore otherwise.  (See Am. Compl. (DE 52) ¶¶ 123-124). If no officers told defendant Thomas Clark's car was at the house, then it is plausible to infer that he affirmatively made statements he did not know to be true in the search warrant affidavit.

The Lee County defendants also argue that defendant Thomas only reasonably relied on defendant Hankins's statements when Thomas swore that officers saw Clark's car in front of the house.  But these are not the facts alleged in the amended complaint.  Defendant Hankins did not state Clark's car was in front of the house; rather, defendant Hankins only stated "a Nissan" was in front of the house.  (Am. Compl. (DE 52) ¶¶ 121-124).  Therefore, according to the well-pled facts of the amended complaint, defendant Thomas could not have relied on information that defendant Hankins, or any other officers, never told him.

Next, the Lee County defendants argue plaintiff's allegation that there are multiple other properties within 52-meters of 680 Messick Road is incorrect.  The Lee County defendants argue that GPS data shows there are no other properties within 52 meters of the house, and therefore defendant Thomas did not mislead the magistrate in his affidavit.  (Lee County Defs' Br. (DE 56)

12

at 15-16). Plaintiffs counter that the 52-meters number is measured from the boundary lines of the 680 Messick Road property, not the house itself, in which case plaintiff's allegations are correct. The court will not resolve these factual disputes on a Rule 12(b)(6) motion and so this argument fails.[3] Shook v. NCG Acquisition, LLC, 114 F.4th 242, 250 n.2 (4th Cir. 2024) ("It is well-established that courts must not entertain factual disputes on a Rule 12(b)(6) motion to dismiss.").

Lastly, the Lee County defendants argue plaintiffs have not alleged a violation of a clearly established right and attempt to distinguish Miller by arguing, in essence, that the officers there lied to the warrant-issuing judge about different subjects than defendant Thomas is alleged to have done here. However, the principles and rights involved are identical, notwithstanding the different substance of the alleged lies. See Miller, 475 F.3d at 632; see also Wilson v. Kittoe, 337 F.3d 392, 403 (4th Cir. 2003) ("[T]he nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity. After all, qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations."). Therefore, the amended complaint sufficiently alleges defendant Thomas violated a clearly established right and is not entitled to qualified immunity.

Next, plaintiffs plausibly plead two Fourth Amendment claims that defeat the individual defendants' argument that they only executed a facially valid warrant.

When an officer acts pursuant to a facially valid warrant, there is typically no liability for a Fourth Amendment violation. See, e.g., Thurston v. Frye, 99 F.4th 665, 677 n.12 (4th Cir. 2024). ("[A]s long as the previously issued warrant is not so facially deficient . . . that the executing

---

[3] The Lee County Defendants make a series of additional factual objections, such as proposing that Clark was at plaintiffs' home and then crossed the street before the search, or arguing which way plaintiff Carr's vehicle, and therefore the license plate, was facing when officers first viewed it. (See Lee County Defs' Reply Br. (DE 96) at 2-4). The court again will not resolve any factual disputes at the Rule 12(b)(6) stage and accepts plaintiffs' allegations as true. Nemet Chevrolet, 591 F.3d at 255

officers cannot reasonably presume it to be valid, a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in executing it."). However, even if a warrant is valid, once officers know or should know the warrant contains errors, they must limit the scope of the search accordingly. See Maryland v. Garrison, 480 U.S. 79, 86, 107 (1987) ("If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment."). Moreover, officers are "required to discontinue the search . . . as soon as they discover[]" that "they might be in a [location] erroneously included within the terms of the warrant." Id. at 87.

Plaintiffs allege that the individual defendants realized six minutes into the search the vehicle at issue was not the one Clark was suspected of driving. (Am. Compl. (DE 52) ¶ 256). The individual defendants also communicated "that ain't the car." (Id. ¶ 257). After realizing the car described was not Clark's, the individual defendants continued to search the home. (Id. ¶¶ 338-340).

Plaintiffs have stated a plausible claim that the individual defendants should have realized the error in the warrant and discontinued the search pursuant to Garrison. The warrant provided that officers "observed the vehicle the suspect's father stated he was riding in[,]" and that officers "confirmed the suspect vehicle has not left." (DE 56-1 at 8). However, plaintiffs allege that the individual defendants realized this was an error early in the search and yet continued to search the home regardless. (Id. ¶ 338-340). The individual defendants therefore were plausibly "required to discontinue the search . . . as soon as they discovered" that "they might be in a [location] erroneously included within the terms of the warrant." Garrison, 480 at 87.

14

Moreover, where <u>Garrison</u> is United States Supreme Court precedent, the court finds the right sufficiently clearly established at this stage.  <u>See Garrison</u>, 480 at 86-87; <u>Pray v. City of Sandusky</u>, 49 F.3d 1154, 1159 (6th Cir. 1995); <u>Simmons v. City of Paris, Tex.</u>, 378 F.3d 476, 479–80 (5th Cir. 2004) ("Based upon <u>Garrison</u> and the holdings of several of our sister circuits, the district court identified the clearly established constitutional rule that, when law enforcement officers are executing a search warrant and discover that they have entered the wrong residence, they should immediately terminate their search.").

Defendants make a series of arguments in opposition.  First, the court rejects the argument that the individual defendants only acted pursuant to a facially valid warrant because, as discussed above, plaintiffs sufficiently allege, even assuming a valid warrant, that the individual defendants should have discontinued the search pursuant to <u>Garrison</u>.

Next, the Pender County defendants argue that the cellphone data still provided sufficient probable cause to continue the search, as according to defendants, no other homes were within 52-meters of the house.  (Pender County Defs' Br.  (DE 90) at 8).  But the court is again bound to take the allegations of the amended complaint as true that there were multiple other homes within the 52-meter range and will not resolve any factual disputes at this stage.  <u>Shook</u>, 114 F.4th at 250 n.2.  Where this argument is based on defendants' version of the facts, the court rejects it at the Rule 12(b)(6) stage.

Lastly, defendants argue that plaintiffs do not sufficiently allege the personal involvement of the individual officers and improperly group defendants.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  <u>Iqbal</u>, 556 U.S. at 676. "[I]t must be affirmatively shown that the official charged

15

acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiffs allege each individual defendant took part in the search. (See Am. Compl. (DE 52) ¶¶ 223-224). Plaintiffs also allege that each of the individual defendants continued the search after it was discovered the car was incorrectly identified in the search warrant. (Id. ¶¶ 338-340). These facts are sufficient to "allow[] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged[,]" Iqbal, 556 U.S. at 678, and that each individual defendant "acted personally in the deprivation of the plaintiff's rights." Wright, 766 F.2d at 850.

In sum, plaintiffs state a plausible claim that the officers should have discontinued the search after realizing errors in the warrant, and at this early stage of the proceedings they are not entitled to qualified immunity as to this claim.

Lastly, plaintiff's plausibly plead that defendants failed to properly knock and announce before attempting forceable entry.

"The Fourth Amendment generally requires police officers entering a dwelling to knock on the door and announce their identity and purpose before attempting forcible entry." United States v. Singleton, 441 F.3d 290, 293 (4th Cir. 2006). Moreover, "the knock and announce requirement has been clearly established law in the Fourth Circuit since at least 1985." Gould v. Davis, 165 F.3d 265, 270 (4th Cir. 1998). However, "[e]xigent circumstances can justify an entry without any knock and announcement if there is a likelihood that the occupants will attempt to escape, resist or destroy evidence." Id.

Plaintiff allege that at 1:07 a.m., officers banged on the front door, shouted, and spoke through a loudspeaker. (Am. Compl. (DE 52) at ¶¶ 261-263). Plaintiff Carr awoke, and thinking the home was "under attack by thieves," peered through the blinds. (Id. ¶¶ 264-265). After seeing

16

plaintiff Carr peer through the blinds, defendants broke the front door. (Id. ¶ 268). "Officers broke into the house less than one minute after they first announced their presence." (Id. ¶ 269).

Plaintiffs have stated a plausible violation of the knock and announce rule, which is a clearly established right under Fourth Circuit law. See Gould, 165 F.3d at 270. Based on the facts of the amended complaint, no exigent circumstances such as evidence destruction or danger to officers applied here. Thus, by failing to properly "knock on the door and announce their identity and purpose before attempting forcible entry[,]" Singleton, 441 F.3d at 293, when no exigent circumstances justified a forcible entry, plaintiffs have stated a plausible violation of the knock and announce requirement.

The Pender County defendants argue because the individual defendants initially called out to plaintiffs, and Clark was suspected of wielding a handgun, they acted reasonably in executing the search warrant. (Pender County Reply Br. (DE 93) at 4).

But the court is again bound to take the allegations of the amended complaint as true at this stage. Nemet Chevrolet, 591 F.3d at 255. The knock and announce rule required defendants not only call out to plaintiffs, but "the officers were required by the Fourth Amendment to knock and announce their presence, and wait a reasonable time for a response, prior to entering [plaintiffs'] home; and, this requirement could only be excused if exigent circumstances justified immediate entry." Gould, 165 F.3d at 270. Based on the amended complaint, the officers did not "wait a reasonable period of time, prior to entering a dwelling[,]" or wait for a response before entering. Id.; (Am. Compl. (DE 52) at ¶¶ 261-263).

Nor did the officers have a reason to suspect that plaintiff Carr when peering through the blinds, or the home generally, posed a danger to defendants. The amended complaint does not contain any facts showing Clark was armed and an active danger to officers requiring such an

17

entry. (See Am. Compl. (DE 52) ¶¶ 40-50); see also Harrold v. Hagen, 174 F.4th 393, 403 n.10, (4th Cir. 2026) ("Officer Hagen — who has not been deposed in this litigation, nor given any sworn account of the relevant underlying events — has repeatedly maintained that, prior to the arrest, he believed [the plaintiff] was armed with a weapon . . . those assertions in Hagen's brief are outside the four corners of the Complaint.")

Next, defendants again argue plaintiffs do not allege sufficient personal involvement to state a claim against the individual defendants. However, plaintiffs have pleaded each individual defendant's involvement in violating the knock and announce rule. Plaintiffs allege that each officer arrived at the home, and without properly knocking and announcing their presence, each individual defendant participated in executing the search warrant. (See Am. Compl. (DE 52) ¶¶ 223-224, 261-271). While the plaintiffs have not alleged which particular individual defendant said what, such specific pleading is not required at this stage. See Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) ("A complaint need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Rather, plaintiffs must plead each individual defedant "acted personally in the deprivation of the plaintiff's rights." Wright, 766 F.2d at 850, and plaintiffs have pleaded facts supporting a plausible claim that the defendants, individually, violated the knock and announce rule.

In sum, plaintiffs have stated plausible claims for relief under the Fourth Amendment against the individual defendants, and the individual defendants have not surmounted the "formidable hurdle" to establish qualified immunity on a motion to dismiss. Owens, 767 F.3d at 396. This finding is without prejudice to defendants' ability to renew qualified immunity arguments under Rule 56 or in other postures.

b.      Federal Takings Clause

The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  Defendants argue that plaintiffs' federal Takings Clause claim must be dismissed because the Takings Clause is not applicable to damage inflicted on property by exercise of a state's police power.

Contrary to defendants' contentions, the United States Court of Appeals for the Fourth Circuit has held that "government actions taken pursuant to the police power are not per se exempt from the Takings Clause," and that this principle is "axiomatic in the Supreme Court's jurisprudence." Yawn v. Dorchester County, 1 F.4th 191, 195 (4th Cir. 2021).  Instead, "[the court] must determine the degree to which the invasion is intended or is the foreseeable result of authorized government action." Id.  "If the invasion is not intended or foreseeable, then it does not constitute a taking." Id.

Indeed, "[n]ot every physical invasion is a taking." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 436 n.12 (1982). In Cedar Point Nursery v. Hassid, 594 U.S. 139 (2021), the United States Supreme Court explained "[i]solated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right." Id. at 159.  Moreover, "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." Id. at 160.

These background limitations include "a privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances . . . Because a property owner traditionally had no right to exclude an official engaged in a reasonable search." Id. at 161.  Therefore,

19

"government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners." Id.

Here, plaintiff Carr has alleged an "invasion [that] [was] intended or [was] the foreseeable result of authorized government action." Yawn, 1 F.4th at 195; (see, e.g. Am. Compl. (DE 52) ¶¶ 264-269). Property destruction is the foreseeable result of the search of plaintiffs' home, and plaintiff Carr also alleges she has not received compensation for the property damage. (Am. Compl. (DE 52) ¶¶ 407, 411).

Plaintiff Carr's federal takings claim plausibly does not fall within "longstanding background restrictions on property rights." Cedar Point, 594 U.S. at 160. The Supreme Court in Cedar Point stated "government searches that are consistent with the Fourth Amendment" do not constitute a taking. Id. at 161 (emphasis added). As discussed above, plaintiffs plausibly allege that the search of their home violated the Fourth Amendment. Accordingly, Cedar Point does not foreclose plaintiff's takings claim.

As defendants argue, neither the Fourth Circuit, nor other appellate courts, have held such a search constitutes a taking. But the Fourth Circuit held in Yawn that "government actions taken pursuant to the police power are not per se exempt from the Takings Clause[,]" and therefore plaintiff Carr's takings claim based on the police power is not barred under Fourth Circuit law as defendants claim. F.4th at 195. Thus, plaintiff Carr asserts "a novel and colorable legal theory[,]" and "Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development[.]" Davison v. Randall, 912 F.3d 666, 691 (4th Cir. 2019). Whether the search of plaintiffs' home constituted a taking, or whether the search fell within "longstanding background restrictions on property rights," Cedar Point, 594 U.S. at 160, and whether the search constituted an "invasion [that] [was] intended or

20

[was] the foreseeable result of authorized government action" are questions to be resolved after factual development. See Yawn, 1 F.4th at 195. As a result, the takings claim should not be dismissed only because it is "a novel legal theory." Davison, 912 F.3d at 691.

Accordingly, plaintiff Carr's federal takings claim may proceed past the motion to dismiss stage.

Defendants make a series of arguments in opposition to plaintiffs' federal takings claim. First, the Lee County defendants state "The Fourth Circuit, as well as other federal courts across the country, have repeatedly held that the Takings Clause is inapplicable to instances where law enforcement has executed search warrants, and instead evaluates related claims under the Fourth Amendment." (Lee County Defs' Br. (DE 56) at 22). The Fourth Circuit, however, has not ruled on this question. The Lee County defendants cite to Cybernet, LLC v. David, No. 7:16-CV-16-RJ, 2018 WL 5779511, (E.D.N.C. Nov. 2, 2018), which is a district court decision decided prior to Yawn. There, the court found no taking occurred "because the alleged damage was caused as a result of the exercise of police power rather than eminent domain power." Cybernet, 2018 WL 5779511 at *16. But, as Yawn holds, "government actions taken pursuant to the police power are not per se exempt from the Takings Clause" under Fourth Circuit law. 1 F.4th at 195. While the Fourth Circuit later affirmed the district court's ruling, it did not address the plaintiff's Fifth Amendment takings claim. See Cybernet, LLC v. David, 954 F.3d 162, 167 (4th Cir. 2020) ("Only Fourth Amendment claims concern us, as Cybernet has waived its other federal claims by failing to assert them on appeal.")

Defendants also rely on Johnson v. Manitowoc Cnty., 635 F.3d 331, 336 (7th Cir. 2011). There, the Seventh Circuit held because the government's "actions were taken under the state's police power[,]" "[t]he Takings Clause claim is a non-starter." Id. at 336. This also conflicts with

the Fourth Circuit's holding in <u>Yawn</u> that "government actions taken pursuant to the police power are not per se exempt from the Takings Clause[.]" 1 F.4th at 195. For the same reason, the Tenth Circuit's finding that "actions taken pursuant to the police power do not constitute takings" is also inapplicable here. <u>Lech v. Jackson</u>, 791 F. App'x 711, 719 (10th Cir. 2019).

Accordingly, defendants' principal argument that "there can be no takings claim based on a use of police power" has been rejected by the Fourth Circuit. (Lee County Defs' Br. (DE 56) at 21).

Defendants' second argument is that other courts of appeals have rejected takings claims in the law enforcement context and argue that these claims are an attempt by plaintiffs' counsel "to create new law that property damage during a search warrant execution is compensable as a taking under the Fifth Amendment." (Lee County Defs' Reply (DE 96) at 7).

The court, however, may not dismiss claims because they "do not fall within the four corners of our prior case law[.]" <u>Wright v. North Carolina</u>, 787 F.3d 256, 263 (4th Cir. 2015). Rather, where the claim is novel and the law unsettled, the Fourth Circuit has repeatedly cautioned district courts against dismissal at the Rule 12(b)(6) stage. <u>See, e.g.</u>, <u>id.</u>; <u>Davison</u>, 912 F.3d at 691; <u>Trujillo v. Landmark Media Enters., LLC</u>, 689 F. App'x 176, 178 (4th Cir. 2017) ("Indeed, as the law firms up in unsettled areas, it may be more feasible to dismiss weaker cases on the pleadings; otherwise, plaintiffs should be given an opportunity to develop evidence before the merits are resolved.").

Moreover, other decisions cited by defendants regarding law enforcement damage to property are distinguishable. For example, the United States Court of Appeals for the Fifth Circuit in <u>Baker v. City of McKinney, Texas</u>, 84 F.4th 378 (5th Cir. 2023) found the "Takings Clause does not require compensation for [the plaintiff's] damaged or destroyed property because, as [the

plaintiff] herself claims, it was objectively necessary for officers to damage or destroy her property in an active emergency to prevent imminent harm to persons." Id. at 388. The United States Court of Appeals for the Ninth Circuit also held similarly "that no taking occurs for the purposes of the Takings Clause when law enforcement officers destroy private property while acting reasonably in the necessary defense of public safety." Pena v. City of Los Angeles, 158 F.4th 1033, 1040 (9th Cir. 2025); see also Hadley v. City of S. Bend, Indiana, 154 F.4th 549, 556 (7th Cir. 2025) (The Fifth Amendment [does not require] compensation when police damage property while executing a valid search warrant.") (emphasis added).[4]

Here, plaintiffs' allegations do not show any imminent impending harm requiring the destruction of property and sufficiently allege that the officers executed an invalid warrant in violation of the Fourth Amendment.

Lastly, the Pender County defendants also state that the court should not adopt the "rule of strict liability" that they argue plaintiffs advance and cite to policy concerns behind finding a taking occurred here. (Pender County Reply (DE 94) 4-5). But at the Rule 12(b)(6) stage the court does not adopt any proposed rule of plaintiffs' or find that the search of plaintiffs' home constituted a taking. Rather, the court finds plaintiff Carr states a plausible claim that may proceed to its merits.

In sum, plaintiff Carr asserts a plausible novel theory under Fourth Circuit law, and the merits of this theory should not be decided at the Rule 12(b)(6) stage.

c.      North Carolina Takings Claim

Takings jurisprudence under North Carolina law leads to the same result.

---

[4]      Additionally, the court notes most of the cases cited by defendants were decided at the summary judgment stage, not the motion to dismiss stage. See Baker, 84 F.4th at 381; Pena, 158 F.4th at 1036; Lech, 791 F. App'x at 713; Johnson, 635 F.3d at 333. The court is not persuaded it should adopt factually distinct holdings of these out-of-circuit cases at the Rule 12(b)(6) stage of the proceedings.

23

The North Carolina Constitution lacks a Takings Clause and instead protects private property from public invasion through its Law of the Land Clause.  See Kirby v. N.C. Dep't of Transp., 368 N.C. 847, 853 (2016); N.C. Const. Art. 1, § 19.  Next, "[d]etermining if governmental action constitutes a taking depends upon whether a particular act is an exercise of the police power or of the power of eminent domain."  Kirby, 368 N.C. at 854.  "Under the police power, the government regulates property to prevent injury to the public." Id. (emphasis original).  "Police power regulations must be enacted in good faith, and ha[ve] appropriate and direct connection with that protection to life, health, and property which each State owes to her citizens."  Id. Furthermore, "[a]n exercise of police power outside these bounds may result in a taking."  Id.

"Under the power of eminent domain, the government takes property for public use because such action is advantageous or beneficial to the public." Id.  (emphasis original).  "As such, [t]he state must compensate for property rights taken by eminent domain; [however,] damages resulting from the [proper] exercise of [the] police power are noncompensable." Id. (alterations original).

Defendants again argue that because "damages resulting from the proper exercise of the police power are noncompensable" under North Carolina law, plaintiff Carr's takings claim must be dismissed.  Id. at 854.

Defendants, however, misapprehend Kirby and related cases' discussion of the state's "police power" in North Carolina's takings jurisprudence.  Kirby states: "[u]nder the police power, the government regulates property to prevent injury to the public." Id. (emphasis original).  "[T]he government, in the exercise of its police power, may regulate and place restrictions upon the use of property in order to secure the general safety, public welfare, and good morals of the community, and any incidental loss occasioned thereby is not compensable." McKinney v.

24

Deneen, 231 N.C. 540, 542 (1950) (emphasis added). "But a direct entry upon and appropriation of private property for a public use does not come within the rule." Id.

Plaintiff Carr alleges the search constituted a "direct entry upon and appropriation of private property." Id; (see, e.g. Am. Compl. (DE 52) ¶¶ 264-269). At issue here is not defendants "[regulating] and plac[ing] restrictions upon the use of property in order to secure the general safety, public welfare, and good morals of the community[.]" Id. Moreover, viewing the phrase "police power" through the lens involving criminal law enforcement, North Carolina cases only exempt "proper" exercises of the police power from compensation; see Kirby, 368 N.C. at 854; Barnes v. N.C. State Highway Commission, 257 N.C. 507, 514 (1962), and plaintiffs have plausibly alleged a search in violation of the Fourth Amendment is not a "proper" exercise of the police power.

North Carolina courts, often in the construction context, have recognized that property damage caused by the government may constitute a "taking." See, e.g., Falls Sales Co. v. Bd. of Transp., 292 N.C. 437, 441 (1977); State Highway Comm'n v. L. A. Reynolds Co., 272 N.C. 618, 624 (1968); Robinson v. N. Carolina Dep't of Transp., 89 N.C. App. 572, 574 (1988) ("Although plaintiffs' property damage caused by the bridge construction does not fit squarely within the above definition of a 'taking,' North Carolina courts have consistently held that such damage does, in fact, constitute a 'taking.'"). Indeed, in Cybernet, the case which defendants heavily rely on in their argument for dismissal of the federal takings claim, the court observed that whether property damage pursuant to a search warrant may constitute a "taking" has not been decided by North Carolina courts. Cybernet, 2018 WL 5779511 at *17 ("Remand is particularly appropriate here, where Plaintiffs' takings claim under the North Carolina Constitution appears to be a novel application of that law.").

25

Similar to the federal takings claim, plaintiffs present a "novel and colorable legal theory" that should be determined on the merits after factual development and not at the Rule 12(b)(6) stage. Davison, 912 F.3d at 691.

d.      Settlement

Next, the Pender County defendants argue that plaintiffs accepted a settlement offer for their property damage, thereby mooting plaintiff Carr's takings claims.

Settlement agreements "are governed by general principles of contract law." Chappell v. Roth, 353 N.C. 690, 692 (2001). "For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Id. "[A] court cannot compel compliance with terms not agreed upon or expressed by the parties in the settlement agreement." Id.

Plaintiffs  sent an estimate requesting payment in the amount of $10,897.99 for the damage to their home.  (Am. Compl. (DE 52) ¶¶ 389-392).  After discussions, defendants offered to pay that amount, "but only if [plaintiffs] [gave] up all claims, demands, actions, or causes of action" in exchange.  (Id. ¶ 405).  Plaintiffs then rejected this offer.  (Id. ¶ 407).

Here, "the parties' minds [did not] meet as to all the terms." Chappell, 353 N.C. at 692. Plaintiffs provided a damage estimate, which defendants offered to pay in exchange for the release of all claims, not just plaintiffs' takings claims. Plaintiffs objected to the release of all their claims, and therefore the parties did not agree to all the terms.

The Pender County defendants argue "[a] deal was struck, and later squabbling over the wording of the Release did not change that[,]" and that a settlement agreement implies a promise to release claims.  (Pender County Defs' Br. (DE 90) at 10).

26

But defendants sought release from all claims arising from the search, not just plaintiff Carr's takings claims. Had defendants only sought release from the takings claims and plaintiffs accepted the compensation offered, then, as defendants argue, there may have been an implied release of those claims. But defendants' requested a release from all claims arising from the search, which the Pender County defendants do not now show is implied from an offer to settle plaintiff Carr's takings claims.

Accordingly, based on the facts in the amended complaint, the parties did not reach a settlement and plaintiff Carr's takings claims are not moot.

e.        Counties as Parties

Defendants argue that Lee and Pender Counties cannot be held liable for the actions of Sheriff's Office personnel and are therefore improper parties to plaintiff Carr's takings claims. North Carolina sheriffs are elected officials, not employees of any county, and sheriff's office personnel are employees of the sheriff, not the county. See, Young v. Bailey, 368 N.C. 665, 369–70 (2016); see also Clark v. Burke County, 117 N.C. App. 85, 89 (1994). Thus, liability for injuries inflicted by sheriff's office personnel may flow upward to, at most, the sheriff, not the county. See Clark, 117 N.C. App. at 89 ("A deputy is an employee of the sheriff, not the county. Therefore, any injury resulting from Deputy Smith's actions in this case cannot result in liability for Burke County[.]").

To violate the Takings Clause, a government must both take property and deny compensation. Horne v. Dep't of Agriculture, 569 U.S. 513, 525–26 (2013). In other words, the violation is not complete until a failure to pay compensation occurs. Id.; see Knick v. Township of Scott, Pa., 588 U.S. 180, 185 (2019). Plaintiffs therefore argue that the counties are directly liable under the Takings Clause because the counties have failed to pay compensation. However,

27

the damage to their house, the taking at issue here, was inflicted by Sheriff's Office personnel, not by any actor whose conduct could be legally attributed to the counties. (See, e.g., Am. Compl. (DE 52) ¶ 223).

Plaintiffs argue "the public as a whole is represented by the county government and by sheriff's office, which is the chief law enforcement officer of the county[,]" and therefore the counties are proper parties to takings caused by the sheriff's office. (Pls' Opp. (DE 92) at 49). Plaintiffs fail to cite any caselaw for the proposition that the county is responsible, neither in a takings context nor any other context, for compensation when the actions are not legally attributable to the counties themselves. In the absence of law suggesting otherwise, the court declines to extend a takings claim to the counties when the conduct is not attributable to them.

While this is another novel liability theory advanced by plaintiffs, in this instance the law before the court demonstrates a clear separation between the liability of the sheriff's office and the county that forecloses plaintiffs' claims. See Young, 368 N.C. at 669 ("In light of the distinct demarcation between county government and the office of the sheriff, we conclude that a sheriff's office is not a program or department of a county"). Accordingly, this is not "a novel legal theory that can best be assessed after factual development[.]" Davison, 912 F.3d at 691.

In sum, although the counties may have denied compensation, their personnel did not take any property. Accordingly, the counties are not proper parties to any of plaintiff Carr's takings claims. Plaintiffs' claims against defendants Lee County and Pender County are dismissed and the motions to dismiss are granted in this part.

f.        Official Capacity Claims Against Defendant Thomas and Defendant Murphy

The Lee County defendants seek dismissal of plaintiffs' claims against defendant Thomas and defendant Murphy in their official capacity as duplicative.  Plaintiffs do not contest that such dismissal is proper.  (Pls' Opp. (DE 92) at 51).

A claim against a governmental actor in the official capacity is actually a suit against the underlying entity or governmental body.  Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiffs sue both defendant Estes, the Sheriff of Lee County, and defendants Thomas and Murphy, officers of that entity, in their official capacities.  Because plaintiffs have effectively sued the same entity multiple times, plaintiffs' official capacity claims against defendants Thomas and Murphy are duplicative and must be dismissed.

g.        Defendant Franklin

Lastly, while named as a defendant in the amended complaint, plaintiffs did not seek issuance of summons as to defendant Franklin.  The Pender County defendants assert that defendant Franklin "was in a hospital with severe injuries when Plaintiffs filed their First Amended Complaint. Plaintiffs do not press any claims against him." (DE 92 at 13 n.1).  Plaintiffs did not contest this statement in their opposition to the Pender County defendant's motion.

Accordingly, the court construes these filings as a notice of voluntary dismissal and dismisses plaintiffs' claims against defendant Franklin without prejudice.

B.     Motion to Strike

Finally, the court turns to the Lee County defendants' motion to strike, which is embedded in their motion to dismiss.

The Lee County defendants seek to strike paragraphs 387–414, 475-476, and 491 of the amended complaint on grounds that these sections include allegations about settlement

negotiations that are barred by Federal Rule of Evidence 408, which prohibits admission of evidence concerning conduct or statements made in compromise negotiations concerning the claim. Fed. R. Evid. 408.

There is a divergence of authority on whether Rule 408-based arguments are cognizable under Federal Rule of Civil Procedure 12(f), which governs striking of pleadings, including between courts within the Fourth Circuit.[5] In the absence of published case law from the Fourth Circuit addressing the issue,[6] the court concludes that Rule 408 does not require striking the pertinent allegations.

Rule 408 upholds important public policy objectives. See, e.g., Macsherry v. Sparrows Point, LLC, 973 F.3d 212, 222 (4th Cir. 2020). The court is mindful of these objectives. However, Rule 408 applies only to "evidence." Fed. R. Evid. 408(a). Pleadings are not evidence sufficient to survive summary judgment. See Bouchat v. Baltimore Ravens Football Club. Inc., 346 F.3d 514, 525 (4th Cir. 2003). Further, Rule 12(f) permits striking only of "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Conspicuously absent from the language of the rule is the word "admissible." The plain language of the rule does not contemplate striking factual allegations that would be inadmissible if presented as evidence at trial. The Lee County

---

[5]     Some district courts in this circuit have held that such Rule 408-based arguments are not a valid basis for striking pleadings. Pridgeon v. Pegram, No. 3:13-cv-467, 2014 WL 1910789, at *3 (W.D.N.C. May 13, 2014); Lane v. Endurance Am. Specialty Ins. Co., No. 3:10-cv-401, 2011 WL 1343201, at *5 (W.D.N.C. Apr. 8, 2011); Chicago Ins. Co. v. Health Care Indem., Inc., No. 3:09-cv-659, 2009 WL 3380387, at *2 (S.D.W. Va. Oct. 20, 2009). Other courts have held the opposite. See, e.g., Sharestates Investments, LLC v. WFG National Title Ins. Co., No. 1:23-cv-1416, 2023 WL 8436159, at *3 (D. Md. Dec. 5, 2023); Parris v. Laliberte, No. 3:12-2202, 2012 WL 5417421, at *1 (D.S.C. Nov. 5, 2012); Staton v. Dollar Tree, Inc., No. 2:08cv350, 2008 WL 11383389, at *3 (E.D. Va. Dec. 11, 2008).

[6]     The Fourth Circuit once affirmed a district court's striking of portions of a complaint under Rule 408, though in an unpublished opinion which did not hold as defendants argue, but merely upheld the decision under an abuse of discretion standard with little analysis. See Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007).

30

Defendants' motion to strike is therefore denied. This determination, however, should not be construed to extend to any future motions in limine or other efforts to restrict evidentiary presentations pursuant to Rule 408.

## CONCLUSION

Based on the foregoing, defendants' motions are resolved as follows:

1. The Pender County defendants' motion to dismiss (DE 89) is GRANTED IN PART and DENIED IN PART. Pender County is DISMISSED from this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This motion is otherwise DENIED.

2. The Lee County defendants' motion to dismiss (DE 55) is GRANTED IN PART AND DENIED IN PART. Lee County is DISMISSED from this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' claims against defendant Thomas in his official capacity and against defendant Murphy in his official capacity are DISMISSED. This motion is otherwise DENIED, including insofar as it seeks to strike portions of the amended complaint under Rule 12(f).

3. Plaintiff's claims against defendant Franklin are DISMISSED WITHOUT PREJUDICE.

4. Defendants are DIRECTED in accordance with Federal Rule of Civil Procedure 12(a)(4) to file responsive pleading to the amended complaint within 14 days of the date of this order.

SO ORDERED, this the 6th day of August, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge